IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ERNEST L. FORD, JR.,

      Plaintiff,                    No. CIV S-05-0990 PAN

    vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.                <u>ORDER</u>

_____/

        The case is before the undersigned pursuant to 28 U.S.C. § 636(c)(consent to proceed before a magistrate judge). Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons discussed below, the court will grant plaintiff's motion for summary judgment or remand and deny the Commissioner's cross-motion for summary judgment.

I. <u>Factual and Procedural Background</u>

        In a decision dated April 28, 2004, the ALJ determined plaintiff was not disabled.[1]

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 <u>et seq</u>. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 <u>et seq</u>. Under both provisions, disability

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments of nerve damage of the hands and arms, spinal stenosis, and obesity, but that these impairments do not meet or medically equal a listed impairment; plaintiff's allegations regarding the severity of his impairments were not totally credible; plaintiff had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand, walk, and sit for six hours in an eight hour workday, occasionally stoop, crouch, crawl, kneel, and climb; plaintiff could do no work with more than occasional wrist flexion, more than frequent power gripping, or more than frequent fingering, such as typing; plaintiff has the residual functional capacity to perform a significant range of light work; a significant number of jobs exist in the national economy that plaintiff could perform; and plaintiff is not disabled. Administrative Transcript ("AT") 578-79.

/////

---

is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

1  Plaintiff contends that the ALJ erred by failing to properly credit the opinion of the treating
2  physician.
3  II.  Standard of Review
4        The court reviews the Commissioner's decision to determine whether (1) it is
5  based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the
6  record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing
7  Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).
8  Substantial evidence means more than a mere scintilla of evidence, but less than a
9  preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.
10 Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a
11 reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402
12 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.
13 197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,
14 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that
15 detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.
16 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of
17 supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If
18 substantial evidence supports the administrative findings, or if there is conflicting evidence
19 supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see
20 Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an
21 improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d
22 1335, 1338 (9th Cir. 1988).
23 III.  Analysis
24    a.  The ALJ Erred by Failing to Provide Specific and Legitimate Reasons for Discrediting
25 and Discounting the Opinion of Plaintiff's Treating Physician.
26       The ALJ gave the opinion of plaintiff's treating physician minimal evidentiary

3

weight. AT 576.  This finding was in error.  The ALJ failed to provide the specific and legitimate reasons necessary to support his conclusions regarding the extent of plaintiff's mental impairments.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  <u>Id</u>.; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  <u>Lester</u>, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  <u>Lester</u>, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); <u>see</u> <u>also</u> <u>Magallanes</u>, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  <u>Lester</u>, 81 F.3d at 831.

When faced with contrary medical opinions, the ALJ is tasked with resolving the dispute.  <u>Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir. 1992).  The ALJ must provide specific and legitimate reasons upon which he based his decision to credit one treating physician

over another.  Id.; Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).  The ALJ's minimal findings as they relate to the evidence show that he did not do so in this case.

The ALJ is charged with setting forth a thorough summary of the facts and conflicting medical evidence that he utilized in reaching his determination regarding the weight to be given medical opinions.  Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).  It is clear that the ALJ did not do that in this case.  From an 898 page record, the ALJ spent only seven paragraphs in his opinion discussing the psychological evidence.  None of those paragraphs are longer than six lines, mention the names of the doctors who provided the information contained in them, nor their status as a treating, examining, or nonexamining physician.

The analysis of the medical opinion upon which the ALJ appears to place the most weight is thoroughly underwhelming.  The discussion of the findings of plaintiff's original treating physician, Dr. Mendelson, who determined that plaintiff had no work related mental impairments, consists of two lines.  AT 575.  The ALJ makes no mention of the substance of this eight page report or any of the laboratory testing upon which it is based.  AT 195.

While the ALJ does not expressly state that he gave Dr. Mendelson's report great weight, it can be presumed from his findings.  Dr. Mendelson provides one of the two psychiatric assessments discussed by the ALJ in his findings.  Like Dr. Mendelson, the ALJ found that plaintiff's mental impairment was not severe.  An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered."  SSR 85-28.

Dr. Mendelson's conclusions differ from those of plaintiff's later treating physician, Dr. Curtis.  The ALJ expressly discounted the March 24, 1999, opinion of Dr. Curtis.  AT 576.  The ALJ stated that he gave minimal weight to Dr. Curtis' report because it was based upon claimant's subjective reporting, rather than objective evidence.  This finding was in error.

Objective evidence includes "medical signs and laboratory findings."  Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005)(quoting SSR 96-4p).  In the context of mental

5

health evaluations, laboratory findings include psychological tests. 40 C.F.R. § 404.1528(c). The ALJ's statement that Dr. Curtis failed to rely on any objective evidence is simply not supported by the facts in the record.

In his March report, totaling 14 pages in length and prepared for a California workers' compensation claim in accordance with the Psychiatric Protocols required under California law, CAL. CODE REGS. tit. 8 § 9728 (2006), Dr. Curtis found plaintiff to be temporarily totally disabled and in need of emotional treatment. AT 385. Dr. Curtis reached this conclusion after reviewing plaintiff's medical history, AT 376, assessing his current emotional symptoms, AT 379, and performing a clinical evaluation, AT 378.

In addition, Dr. Curtis administered to plaintiff no fewer than four separate psychological tests. AT 381-84. These tests included the Beck Depression Inventory, the Neuroticism Scale Questionnaire (NSQ), the Minnesota Multiphasic Personality Inventory (MMPI), and the Forer Structured Sentence Completion Test. Within these tests, various assessments were made as to plaintiff's risk of suicide (Beck Scale for Suicidal Ideation); and hypochondriasis, depression, hysteria, antisocial behavior, paranoia, anxiety, hypomania, and mental confusion or dysfunction (MMPI).

The ALJ was made aware on multiple occasions of Dr. Curtis' objective methodology. Information about the tests administered were contained in the report provided by Dr. Curtis, which was part of the record utilized by the ALJ, and to which he cites in his findings. AT 576. Furthermore, plaintiff specifically highlighted the objective testing during the hearing on March 3, 2004. AT 625.

It is apparent on the face of Dr. Curtis' report that objective evidence supported his conclusions. As any doctor would, in particular a mental health professional, Dr. Curtis relied to some extent on plaintiff's subjective complaints. However, for the ALJ to conclude that this was the primary basis upon which Dr. Curtis formed his opinion, and that "the record does not contain any objective findings," AT 575, is simply not true.

1   Credibility determinations do factor into evaluations of medical evidence. Webb
2   v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); see e.g. Batson v. Comm'r of Soc. Sec. Admin.,
3   359 F.3d 1190, 1195 (9th Cir. 2004). When there are legitimate reasons to doubt a plaintiff's
4   complaints, the opinions upon which those complaints are based are also questionable. See
5   Morgan v. Comm'r of Soc. Sec. Admin., 169, F.3d 595, 602 (9th Cir. 1999)("A physical opinion
6   of disability 'premised to a large extent upon the claimant's own accounts of [her] symptoms and
7   limitations' may be disregarded where those complaints have been 'properly discounted.'"
8   (quoting Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989))). However, the ALJ failed to
9   articulate any legitimate reasons to doubt plaintiff's credibility as it concerns his mental illness.

10   The ALJ found plaintiff's complaints of disabling hand and arm pain not credible
11   for multiple reasons. The ALJ cited to plaintiff's ability to bowl once a week as evidence that
12   plaintiff's physical activities were inconsistent with his claimed injuries. AT 576. In addition,
13   the ALJ noted that the medical evidence did not show any signs of muscle wasting or atrophy in
14   the hands and arms, results one might expect to find in someone claiming to have disabling pain
15   in those areas. Id. The ALJ made no mention of plaintiff's complaints of mental illness, nor did
16   he evaluate their credibility.

17   While some of the psychiatric problems identified by the mental health experts
18   stemmed from plaintiff's physical impairments, those impairments did not form the basis of the
19   doctors' opinions. Rather, Dr. Curtis, like Dr. Mendelson, evaluated plaintiff on his mental, not
20   physical, problems, and supported his opinion with objective evidence. Consequently, it cannot
21   be said that Dr. Curtis' opinion is undermined by the quality of information upon which it is
22   based. See Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 434 (9th Cir.
23   1988)(upholding rejection of physician's opinion "based only on [plaintiff's] complaints"). It is
24   apparent that Dr. Curtis evaluation of plaintiff's mental status did not rely solely upon his
25   discredited physical complaints.
26   /////

1  The ALJ also noted that Dr. Curtis' March report was given less weight because it failed to include any specific functional limitations upon which to base an assessment of disability.  This fact does not provide the substantial evidence necessary to discount this opinion.  The failure to include this information did not undermine the substance of the report and was consistent with the practice of the other opinion in the record upon which the ALJ relied.

Dr. Curtis' March report provides sufficient detail of the process utilized to assess plaintiff's condition and the conclusions reached as a result.  Furthermore, the report issued by Dr. Curtis upon this initial evaluation was similar in scope and substance to the report issued by Dr. Mendelson upon her first meeting with plaintiff on July 28, 1998.  AT 201.  Both initial reports refused to give specific functional limitations as both doctors considered it not appropriate at the time.  AT 212, 386.

The ALJ placed great reliance in Dr. Mendelson's second evaluation from February 1999, which included a specific functional limitation assessment.  AT 198.  Dr. Mendelson found plaintiff to be very slightly limited in his ability to maintain work pace, perform complex or varied tasks, and relate to other people beyond giving and receiving instructions.  Id.  However, the ALJ gives little apparent weight to Dr. Curtis' second evaluation, AT 576, which also contains a specific functional assessment.

Dr. Curtis completed a second evaluation of plaintiff on August 23, 1999.  AT 349.  In that examination, Dr. Curtis found plaintiff slightly to moderately impaired as a result of his major depressive disorder.  AT 367-68.  Dr. Curtis completed this assessment as part of plaintiff's claim for worker's compensation benefits in the state of California, using the format and terminology required by the California state agency.  AT 370.  This format does not translate precisely to the social security system.  As a result, the ALJ was obligated to understand the vernacular of the California code, and properly appreciate the meaning of the particular terms utilized in this state claim.  Desrosier v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988).  It is not apparent that the ALJ did so in this case.

In California, slight and moderate impairments are defined in the Psychiatric Protocols as "noticeable" and "marked," respectively. See CAL. CODE REGS. tit. 8 § 9728 (2006); California Division of Workers' Compensation Medical Unit website at www.dir.ca.gov/imc/psych.html. Relative to other ratings within the California workers' compensation system, these classifications are the second and third most severe, ahead of minimal and very slight, but behind severe.[2] These definitions for mental impairment are similar to those found in the regulations for physical pain. Slight pain is pain that can be tolerated, but would cause some handicap in performance. CAL. CODE REGS. tit. 8 § 9727 (2006). Moderate pain could be tolerated, but would cause a marked handicap in performance. Id.

The ALJ gave no apparent weight to Dr. Curtis' August report in spite of the fact that it came from plaintiff's treating physician and contained findings that indicated more than minimal mental impairment. While the ALJ acknowledged that the report diagnosed major depressive disorder, he noted that it only assigned slight to moderate impairment. AT 576. However, the ALJ failed to appreciate that this finding was made in the context of a workers' compensation claim, rather than a social security evaluation.

In spite of Dr. Curtis' August report, the ALJ found plaintiff's mental impairment to be not severe because he suffered from only mild impairment in his ability to maintain social functioning, concentration, persistence and pace, and experienced no limitations in his social functioning. AT 576. Under the social security regulation, "mild" is the fourth of five levels of severity, behind "extreme," "marked," and "moderate," but ahead of "none." 20 C.F.R. 416.920a(c)(4). A mild impairment is generally not considered severe. Id.

A mild level of impairment in the social security system is less severe than a slight to moderate level of impairment in the California workers' compensation system, both in

---

[2] Dr. Mendelson found plaintiff to be very slightly impaired in several categories. AT 198. Under the Psychiatric Protocols, very slight impairment is defined as "detectable." See CAL. CODE REGS. tit. 8 § 9728 (2006); California Division of Workers' Compensation Medical Unit website at www.dir.ca.gov/imc/psych.html.

In California, slight and moderate impairments are defined in the Psychiatric Protocols as "noticeable" and "marked," respectively. See CAL. CODE REGS. tit. 8 § 9728 (2006); California Division of Workers' Compensation Medical Unit website at www.dir.ca.gov/imc/psych.html. Relative to other ratings within the California workers' compensation system, these classifications are the second and third most severe, ahead of minimal and very slight, but behind severe.[2] These definitions for mental impairment are similar to those found in the regulations for physical pain. Slight pain is pain that can be tolerated, but would cause some handicap in performance. CAL. CODE REGS. tit. 8 § 9727 (2006). Moderate pain could be tolerated, but would cause a marked handicap in performance. Id.

The ALJ gave no apparent weight to Dr. Curtis' August report in spite of the fact that it came from plaintiff's treating physician and contained findings that indicated more than minimal mental impairment. While the ALJ acknowledged that the report diagnosed major depressive disorder, he noted that it only assigned slight to moderate impairment. AT 576. However, the ALJ failed to appreciate that this finding was made in the context of a workers' compensation claim, rather than a social security evaluation.

In spite of Dr. Curtis' August report, the ALJ found plaintiff's mental impairment to be not severe because he suffered from only mild impairment in his ability to maintain social functioning, concentration, persistence and pace, and experienced no limitations in his social functioning. AT 576. Under the social security regulation, "mild" is the fourth of five levels of severity, behind "extreme," "marked," and "moderate," but ahead of "none." 20 C.F.R. 416.920a(c)(4). A mild impairment is generally not considered severe. Id.

A mild level of impairment in the social security system is less severe than a slight to moderate level of impairment in the California workers' compensation system, both in

---

[2] Dr. Mendelson found plaintiff to be very slightly impaired in several categories. AT 198. Under the Psychiatric Protocols, very slight impairment is defined as "detectable." See CAL. CODE REGS. tit. 8 § 9728 (2006); California Division of Workers' Compensation Medical Unit website at www.dir.ca.gov/imc/psych.html.

description as well as relative to other ratings. The ALJ's conclusion that plaintiff suffers from a mild impairment in some categories of work function differs from Dr. Curtis's opinion that plaintiff suffers from noticeable to marked (slight to moderate) impairments in every category. However, consistent with his cursory examination of the medical evidence in this case, the ALJ gave no reason, specific or legitimate, for failing to credit Dr. Curtis' conclusions.

Furthermore, it appears on the face of the report that the ALJ discounted Dr. Curtis' opinion because of the fact that he was retained by plaintiff's attorney. AT 576. While not provided as a specific reason, the ALJ does not acknowledge the source of any other medical opinion. It can only be assumed that because Dr. Curtis' report came "at the behest of [plaintiff's] representative," AT 576, this was a factor in the ALJ's evaluation of the evidence.

Such a finding is not a legitimate reason to discredit Dr. Curtis' conclusions. The purpose for which a medical opinion is solicited does not provide a legitimate basis to reject that opinion. See Lester, 81 F. 3d at 832. To the extent that the ALJ discounted Dr. Curtis' opinion because it was procured by plaintiff's representative, such a conclusion was not proper.[3]

The ALJ's treatment of the medical evidence in this case, as it related to plaintiff's mental illness, does not measure up to the standard required under the law and regulations. While the ALJ provided some reasons to discount the evidence of plaintiff's treating physician, it can hardly be said that those reasons were specific or legitimate. The ALJ's failure to thoroughly discuss the medical evidence and to recognize the objective evidence in the record, as well as his improper discounting of the source of plaintiff's medical opinions, casts serious doubt upon his conclusions.

The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.

---

[3]In spite of well established precedent, the Commissioner supports this line of reasoning, arguing that because Dr. Curtis was retained by plaintiff's attorney, the ALJ "exercised appropriate discretion" in discounting his opinion. Government Brief at 8:11.

1990). Here, the ALJ improperly rejected Dr. Curtis' February opinion. Furthermore, the ALJ provided no reasoning for his rejection of Dr. Curtis' August opinion that plaintiff suffers from noticeable to marked mental impairments. Where the ALJ "fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [the court] credit[s] that opinion as 'a matter of law.'" Lester v. Chater, 81 F.3d 821, 834 (9th Cir.1995)(quoting Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989)).

It must be presumed that plaintiff suffers from noticeable to marked limitations in all of the functional categories put forward by Dr. Curtis. Upon presentation of these limitations, the vocational expert stated that plaintiff could not perform any gainful activity. AT 623. Under the sequential analysis, because no jobs exist in the national economy for which plaintiff is qualified, awarding of benefits is appropriate. 20 C.F.R. § 404.1520(f).

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for immediate payment of benefits. As payment of benefits is appropriate in this case because of the ALJ's failure to properly credit the opinion of plaintiff's treating physician, the other issues raised by plaintiff are dismissed as moot.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is granted.

2. The Commissioner's cross motion for summary judgment is denied.

3. This action is remanded to the Commissioner for immediate payment of benefits.

DATED: June 13, 2006.

UNITED STATES MAGISTRATE JUDGE

ggh13
Ford.ss.wpd